EX PARTE Jorge Luis SANCHEZ, Applicant

NO. WR-83,806-01

Court of Criminal Appeals of Texas.

Delivered: November 4, 2015

Patrick L. Hancock, for Jorge Luis Sanchez.

## OPINION

Per curiam.

Pursuant to the provisions of Article 11.07 of the Texas Code of Criminal Procedure, the clerk of the trial court transmitted to this Court this application for a writ of habeas corpus. *Ex parte Young*, 418 S.W.2d 824, 826 (Tex.Crim.App.1967). Applicant pleaded "no contest" to aggravated assault and was sentenced to ten years' imprisonment. He did not appeal his conviction.

Applicant contends, among other things,[1] that his trial counsel rendered ineffective assistance because counsel erroneously advised Applicant that he could receive community supervision from the trial court if he pleaded "no contest" to this offense. Applicant alleges that the trial court and the prosecutor also believed that Applicant was eligible for community supervision from the trial court. Applicant alleges that had he known that he could not receive community supervision from the trial court for this offense because of the deadly weapon allegation, he would not have pleaded "no contest" to the trial court, but would have taken the case to trial by jury, where he would have been eligible for community supervision.

1. This Court has reviewed Applicant's other claims and finds them to be without merit.

Applicant's trial counsel has filed an affidavit, in which he concedes that he incorrectly advised Applicant that he would be eligible for community supervision from the trial court if he pleaded "no contest" to this offense. Counsel also states that he did not advise Applicant regarding the availability of deferred adjudication, and did not file a motion requesting deferred adjudication community supervision.

The trial court has determined that trial counsel's performance was deficient in that counsel advised Applicant incorrectly that he would be eligible for community supervision from the trial court, and that such deficient performance prejudiced Applicant. The trial court also finds that the prosecutor and the trial court were under the mistaken impression that Applicant was eligible for community supervision from the trial court, and that Applicant was never advised that he was not eligible for community supervision because of the nature of the offense to which he pleaded "no contest." The trial court concludes that Applicant's plea was not knowingly and voluntarily entered. Relief is granted. The judgment in Cause No. 10–07–00050–CRL–A in the 218th District Court of La Salle County is set aside, and Applicant is remanded to the custody of the Sheriff of La Salle County to answer the charges as set out in the indictment. The trial court shall issue any necessary bench warrant within 10 days after the mandate of this Court issues.

Copies of this opinion shall be sent to the Texas Department of Criminal Justice–Correctional Institutions Division and Pardons and Paroles Division.

Yeary, J., filed a concurring opinion.

Richardson, J., not participating.

Yeary, J., filed a concurring opinion.

The Court holds today that we should grant relief to Applicant on the grounds of ineffective assistance of counsel. According to the Court, Applicant's trial counsel gave him erroneous advice when he told him that "the trial court had the authority to grant him 'straight' probation" and that "the trial court could assess probation." While I agree that we should grant relief, I do not agree that trial counsel's advice was factually incorrect or erroneous. I simply believe that trial counsel's advice was not sufficiently detailed in light of our recent decision in *Guthrie–Nail v. State*, —— S.W.3d ——, ——, 2015 WL 5449642 at *3, del. (Tex.Crim.App. Sept. 16, 2015). *Guthrie–Nail* rendered uncertain the question of the availability of judge-imposed community supervision under Article 42.12, Section 3g(a)(2) of the Texas Code of Criminal Procedure by holding that trial judges have unfettered discretion to decline to make a deadly weapon finding. TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2). The proper resolution of this case is not as straightforward as the Court makes it out to be and requires further explanation.

### *The Aftermath of* Guthrie–Nail

Much to my consternation, *Guthrie–Nail* held that, even if a defendant pleads guilty to an allegation of committing a crime with a deadly weapon, the trial judge still has complete discretion to decline to make an affirmative finding that a deadly weapon was used. *Guthrie–Nail,* —— S.W.3d at —— —— ——, 2015 WL 5449642 at *3–4; *see id.* at ——, 2015 WL 5449642 at *12 (Yeary, J., dissenting). This is of no small import in this case. Under Article 42.12 § 3g(a)(2), "when it is shown that a deadly weapon was used or exhibited" the judge may not grant community supervision. TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2). The plain language

of the statute seems to indicate that community supervision is not available any time evidence of a deadly weapon is "shown." Yet this Court in *Guthrie–Nail* held otherwise: Even if the defendant pleads guilty to a deadly weapon allegation, the trial judge can still exercise discretion to decline to make an affirmative deadly weapon finding, and in that event the probation statute "will not operate as a bar to probation[.]" *Guthrie–Nail*, —— S.W.3d at ——, 2015 WL 5449642, at *3 (quoting *Hooks v. State*, 860 S.W.2d 110, 114 (Tex.Crim.App.1993)).

### Ineffective Assistance of Counsel

Despite the majority's opinion here that counsel "incorrectly advised Applicant," it is difficult in this case to say categorically that Applicant was given incorrect advice when trial counsel told him that the trial court still had the authority to grant community supervision. While Applicant's community supervision eligibility turned on the entry of a deadly weapon finding in the judgment, whether or not an entry would be made was contingent on how the trial court would exercise its unfettered authority to decide whether or not to make an affirmative finding of a deadly weapon. *Id.* (citing *Hooks*, 860 S.W.2d at 114).

In granting relief today, the Court relies on trial counsel's concession that he "incorrectly advised Applicant that he would be eligible for community supervision," and on the trial court's recommended finding that such advice was incorrect. But, in *Guthrie–Nail*, the Court determined that we had already held in *Hooks*—"by necessary implication"—that a trial judge could decline to make an affirmative finding of a deadly weapon even if the defendant pled guilty to a deadly weapon allegation. *Id.* Indeed, according to the majority in *Guthrie–Nail*, this has been the law since 1993! Contrary to what the Court says today, the advice that trial counsel gave to Appli-

cant was not inconsistent with precedent under *Guthrie–Nail's* interpretation of *Hooks*.

The Court today also references the fact that defense counsel, the prosecution, and the trial judge were "under the mistaken impression that Applicant was eligible for community supervision from the trial court." Majority Opinion at 288. But this impression was not necessarily "mistaken." Under the majority opinion in *Guthrie–Nail*, it is difficult to know how to advise a defendant who is pleading no contest to a deadly weapon allegation with respect to whether or not he is eligible for community supervision. Under Section 3(a) of Article 42.12, a judge may ordinarily impose community supervision. TEX. CODE CRIM. PROC. art. 42.12 § 3(a). But under Section 3g(a)(2), the judge is prohibited from doing so "when it is shown that a deadly weapon ... was used or exhibited during the commission of a felony offense ... and that the defendant used or exhibited the deadly weapon[.]" TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2).

I suppose the issue then becomes, does community supervision eligibility disappear when the defendant pleads guilty or no contest to a deadly weapon allegation? Under a plain reading of Article 42.12 § 3g(a)(2), common sense would say "yes." But *Guthrie–Nail* indicates otherwise, holding that a plea to a deadly weapon allegation does not *necessarily* render a defendant ineligible for community supervision. How else could the defendant in *Hooks* have pled guilty to a deadly weapon allegation and still have received community supervision? The logical force of these holdings suggests that a defendant retains at least the *possibility* of obtaining judge-imposed community supervision right up until such a time as the trial judge exercises his discretion to make an affirmative deadly weapon finding. But where that

eligibility begins and ends is far from certain, and advising a defendant with respect to community supervision eligibility under these circumstances is a dicey proposition. It should come as no surprise that giving the trial court the authority to ignore evidence when making its findings would lead to such confusion.

None of this is to say that counsel here was not ineffective. Nowhere in his affidavit did trial counsel say that he fully explained to Applicant the variables involved in pleading no contest to an indictment with a deadly weapon allegation, nor did he tell Applicant the effect that such a plea might—or might not—have on his ability to actually obtain community supervision. While the trial court had the authority to decline to make a deadly weapon finding, Applicant should have been told that pleading no contest to an indictment with a deadly weapon allegation would, at the very least, have created an additional potential impediment to receiving community supervision, since it would give the trial court the discretion to make an affirmative deadly weapon finding.[1] That information was crucial to making an informed decision on whether to plead guilty, and trial counsel was deficient in failing to inform Applicant of it.

This case demonstrates the oddity of our holding in *Guthrie–Nail.* A trial court is prohibited by statute from granting community supervision if there is a deadly weapon finding. Yet, that same trial court has *absolute discretion* to make, or decline to make, a deadly weapon finding despite a plea of guilty to a deadly weapon allega-

tion. But if the very same trial court has the authority to decline to make the deadly weapon finding—no matter what the evidence shows—then, as a purely practical matter, the decision to grant community supervision is itself wholly within the discretion of the trial court, and the statutory prohibition against judge-imposed community supervision is rendered toothless.

My interpretation of Article 42.12, Section 3g(a)(2)—laid out in my dissent in *Guthrie–Nail*—would bring far more clarity to this issue. I believe that a judge must make an affirmative finding of a deadly weapon whenever "the trial court is the fact-finder and the defendant pleads guilty to an offense 'as alleged' in an indictment that has alleged a deadly weapon." *Guthrie–Nail,* —— S.W.3d at ——, 2015 WL 5449642, at *12 (Yeary, J., dissenting). Not only does this better serve the legislative intent,[2] but it also simplifies defense counsel's advisory function in the plea bargain context, at least in the face of a deadly weapon allegation. Under my interpretation, trial counsel could simply have advised Applicant that a guilty plea to a charge containing a deadly weapon allegation would serve to render him *ineligible* for straight community supervision—period. Unfortunately, our previous decision in *Guthrie–Nail* has left this area of the law far more muddled and uncertain than it should be.

### Conclusion

While I agree with the Court that we should grant Applicant relief, we should not declare that what trial counsel advised

---

1. Under Article 42.12 § 3(a) of the Texas Code of Criminal Procedure, a trial court must take into account various factors, such as "the best interest of justice, the public, and the defendant" when determining whether to grant or deny community supervision to the defendant. TEX. CODE CRIM. PROC. art. 42.12 § 3(a).

2. *Guthrie–Nail,* —— S.W.3d at ——, 2015 WL 5449642, at *12 (Yeary, J., dissenting) ("[O]bviously the Legislature did not want the trial court to have any discretion to impose regular community supervision 'when it is shown that a deadly weapon' was used.").

his client was inaccurate or incorrect. It was simply insufficiently detailed to inform his client of a nuance we have lately (or was it in 1993?) created in the law that was critical to an informed decision how to plead, and it therefore failed to meet the constitutional threshold of professional competence.

With these observations, I concur.