**Opinion issued March 31, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00541-CR

———————————

## EX PARTE NOLBERTO BLANCO

---

**On Appeal from County Court at Law No. 2**
**Harris County, Texas**
**Trial Court Cause No. 2511636**

---

## MEMORANDUM OPINION

A jury convicted Appellant Nolberto Blanco of the offense of assault with bodily injury, a Class A misdemeanor. The trial court sentenced him to three days' confinement, ordered him to pay restitution and court costs, and suspended his driver's license. One year later, Blanco filed an application for writ of habeas corpus arguing his trial counsel rendered ineffective assistance by filing an untimely motion

for new trial and failing to perfect Blanco's notice of appeal. After a hearing, the habeas court denied Blanco's writ and this appeal ensued.

Blanco argues the habeas court erred in denying his writ because his trial counsel rendered ineffective assistance of counsel. We affirm.

## Background

On September 9, 2022, a jury convicted Blanco of assault with bodily injury. On the same day, the trial court sentenced him to three days' confinement in the Harris County jail, ordered him to pay $3,500 in restitution, $270 in court costs, and $40 in reimbursement fees, and suspended his driver's license.[1] Blanco was given credit for two days' time served.

## Motion for New Trial

On October 11, 2022, Blanco's trial counsel filed a motion for new trial and motion in arrest of judgment. She asserted the motion was timely filed because October 9, 2022—the day on which the motion was due—fell on a weekend and the "following Monday, October 10, was a national holiday." Relying on a purported conversation she had with jurors following trial, Blanco's counsel argued "the verdict was contrary to the law and the evidence" because the jurors allegedly told

---

[1] Under Texas Penal Code section 12.21, "[a]n individual adjudged guilty of a Class A misdemeanor shall be punished by: (1) a fine not to exceed $4,000; (2) confinement in jail for a term not to exceed one year; or (3) both such fine and confinement." TEX. PENAL CODE § 12.21.

her "they believed [Blanco had] acted in self-defense."[2]  According to Blanco's trial counsel, the "jury admitted that they believed the complainant [had thrown] the first punch and that [Blanco had] acted in self-defense."  In support of the motion, trial counsel submitted her own affidavit relating her purported conversation with jurors.  Trial counsel did not secure a hearing for the motion for new trial within seventy-five days of Blanco's sentence date.  As a result, the motion was overruled by operation of law.

## The Writ Application and Hearing

Over a year after his conviction, on December 21, 2023, Blanco filed an application for writ of habeas corpus arguing his trial counsel rendered ineffective assistance by filing an untimely motion for new trial and failing to perfect his notice of appeal "in violation of the Fifth, Sixth, and Fourteenth Amendments, U.S.C.A. and Art. 1 [Section] 10, Art. 1 [Section] 19 of the Texas Constitution."  Blanco argued that his motion for new trial was due on Sunday, October 9, 2022, but was untimely filed by his counsel on Tuesday, October 11, 2022.  He also argued that his trial counsel had not filed a notice of appeal.[3]  Blanco requested that the trial court

---

[2]     Blanco's counsel characterized the incident underlying the assault charge as a "fist-fight" that "lasted approximately 15 seconds" where "no weapons were used."  She argued "[t]he amount of force used by [Blanco] was reasonable" because as the evidence reflected, the "complainant threw the first punch."

[3]     Presumably because he argued the motion for new trial was filed late, Blanco did not base his ineffective assistance claim on his counsel's failure to set the motion for hearing within seventy-five days of his sentence date.

3

permit him to file an out of time notice of appeal or an out of time motion for new trial. Blanco filed a first amended application for writ of habeas corpus seeking the same relief and asserting that because his conviction involved restitution, he was subject to "collateral criminal consequences."

The State filed a response arguing that Blanco's writ application should be denied "for failure to *plead* and prove facts which, if true, entitle[d] him to habeas relief—including facts demonstrating that [his trial counsel's] conduct prejudiced him." (Emphasis in original.) The State argued that trial counsel's "unsworn affidavit," filed in support of Blanco's writ, failed to address why trial counsel filed a late motion for new trial, and that a "silent record" was insufficient to establish prejudice. The State also argued that nothing, including trial counsel's "bare-bones affidavit," suggested Blanco "ever desired to appeal his conviction or to file a motion for new trial."[4] In any event, the State argued that Blanco had not "prove[n] prejudice because he fail[ed] to prove that [his] motion for new trial had merit" because it was solely "based on inadmissible juror hearsay." As for the notice of appeal, the State argued that Blanco had not established prejudice because nothing

_____

[4] The referenced "unsworn affidavit" from Blanco's trial counsel, submitted in support of Blanco's first amended application for writ of habeas corpus, is not included in the appellate record. As we note below, however, Blanco attached the same affidavit to his second amended application, and that affidavit is included in the clerk's record.

4

in the record reflected his desire to appeal. And it argued that any statement by Blanco on the issue following the State's response would be suspect given he "waited over a year after his conviction before filing his initial writ." The State argued that Blanco's "delay in seeking to perfect his appeal directly and negatively impact[ed] the credibility of any claim that he desired to appeal his conviction."

After the State filed its response, Blanco filed a memorandum in support of his first amended writ application reiterating that trial counsel had not filed a notice of appeal and that she filed an untimely motion for new trial. Blanco argued that "[a]ffidavits by trial counsel and [Blanco] strongly suggest[ed] that [Blanco] communicated his desire to appeal his conviction."[5] He also asserted that trial counsel's action in moving for a new trial was an indication that Blanco communicated to trial counsel his desire to appeal his conviction. Blanco also argued that because trial counsel had not filed a notice of appeal despite Blanco's request, prejudice was presumed, and the State had not rebutted the presumption.

The State filed a response to Blanco's memorandum[6] distinguishing Blanco's cited authority, noting that unlike here, in all three cited cases, there was evidence

---

[5] It is unclear what affidavits Blanco's habeas counsel is referring to, as none are attached to Blanco's memorandum in support of the writ application included in the clerk's record.

[6] The State explained that because Blanco's memorandum did not address the State's arguments regarding his ineffective assistance claim based on the motion for new trial, it was limiting its response to Blanco's claim regarding the alleged failure of his trial counsel to perfect his notice of appeal.

5

the defendant desired to appeal his case. The State also argued that "the holding in [*Ex parte*] *Axel* explicitly stated that trial counsel had a duty to *advise* concerning the right to an appeal, not to actually file a notice of appeal absent the [applicant's] desire to do so[,]" and further that "the decision to appeal belongs to the [applicant]."[7] (Emphasis in original) (internal quotations omitted).

The State argued that prejudice is presumed only if the applicant sufficiently proves his desire to appeal his conviction, but Blanco had not proven his desire to appeal his conviction. The State argued that Blanco's trial counsel's "undated declaration d[id] not mention any conversations she had with [Blanco] [regarding] his appellate rights or a notice of appeal."[8] And the State was "unaware of any sworn statement or affidavit" from Blanco "explicitly stating he desired to appeal his conviction." The State argued that in any event, the trial court "should highly scrutinize any evidence of prejudice" as Blanco waited more than a year to file a habeas application seeking to appeal his conviction.

On May 17, 2024, over a month after the State filed its response, Blanco filed a second amended application for writ of habeas corpus submitting for the first time

---

[7]   757 S.W.2d 369, 374 (Tex. Crim. App. 1988).

[8]   According to the State, trial counsel's affidavit did not "explicitly mention an appeal at all" and "focuse[d] primarily on her actions [regarding Blanco's] untimely and insufficient motion for new trial."

an affidavit from Blanco dated May 2, 2024, where Blanco averred for the first time

that:

> On September 9, 2022,[9] I asked [trial counsel] that I desired to appeal my case, and instructed [trial counsel] to proceed with the appeal and file the Notice of Appeal with the court. [Trial counsel] assured me it will be done in a few days. Therefore, I assumed it would be done after my discussion with her.
>
> A month after my conviction, I received a phone call from [trial counsel] stating that she was sorry that the notice of appeal was never filed with the court because she had missed the deadline to file my notice of appeal.

Blanco also filed an affidavit from his trial counsel in support of his second amended application for writ of habeas corpus. The affidavit from his trial counsel does not discuss any communications with Blanco concerning an appeal. In her affidavit, trial counsel discusses only the filing of Blanco's motion for new trial and her purported conversation with the jury after the verdict was rendered.

The trial court issued a writ of habeas corpus directing Blanco to appear for a hearing on his application on June 20, 2024. During the writ hearing, Blanco testified that on the day he was convicted, he told his trial counsel he wanted to "continue the case all the way" by filing another trial. Asked by habeas counsel whether that meant filing an appeal, he responded, "An appeal, yes, sir." According to Blanco, his trial counsel told him "she would do it." Blanco testified that he

---

[9] Blanco was convicted and sentenced on September 9, 2022.

7

"specifically told [his trial counsel he] wanted the appeal filed," and she "specifically told [him] she was going to file a notice of appeal."

Blanco testified that he still paid the restitution and all costs because he thought he was "gonna get that money back because . . . [he] was 100 percent [he] was acting in self-defense." He testified that his trial counsel informed him she had missed the deadline with respect to his motion for new trial,[10] but he "didn't understand" whether she was referring to a motion for new trial or the notice of appeal. According to Blanco, he told his trial counsel he wanted to appeal, but she told him "she couldn't do anything about it." Later, when Blanco testified his trial counsel told him "it was too late," he testified he did not know whether she was "talking about a motion for new trial or appeal," but he "wanted another trial."

Blanco's trial counsel also testified at the hearing. She stated she represented Blanco in the underlying matter involving a charge of assault, and that at first, Blanco was offered "pretrial intervention, class and dismiss," but Blanco "rejected that offer and stated he wanted to go to trial." She denied that Blanco requested she appeal his conviction:

> Habeas Counsel: When he was found guilty, at any time did Mr. Blanco request that you file a notice of appeal?

---

[10] Trial counsel told Blanco she couldn't file the motion for new trial on Columbus Day, a legal holiday, and she thought she could file it the next day, but "it was already too late."

Trial Counsel:     No.

Habeas Counsel:   Did you ever tell him you were going to do it sua sponte?

Trial Counsel:     No.

When asked whether she had ever discussed his right to appeal or "anything else about post-conviction litigation," trial counsel testified she "notified [Blanco] of his right to appeal" and "there was no other questions or no further discussions after that." She testified she told Blanco he had thirty days to appeal his conviction:

Habeas Counsel:   Did he ever tell you he did not want to appeal the case?

Trial Counsel:     . . . We did talk about the sentence that he received which was a time-served sentence. We did discuss that, the actual outcome, you know, could be different. And he decided to pay restitution and go on.
. . .

Habeas Counsel:   After talking to the jury, did you inform [Blanco] of the conversation . . . you had with any jury member? Did you inform Mr. Blanco?

Trial Counsel:     Yes, we did discuss that.

Habeas Counsel    Did he then indicate he wanted post-conviction litigation in the case?

Trial Counsel:     No, he did not.

Trial counsel testified that following Blanco's conviction on September 9, 2022, based only on her conversation with the jury, she discussed with Blanco that she "could file a motion for new trial" and while he "did not understand what that

9

meant," they discussed it and "he agreed to that."[11]  They did not discuss "whether or not a motion for new trial would toll the deadlines or extend the deadline for filing a [notice of appeal]."  Trial counsel stated that "[a]fter speaking with [Blanco] about his options after verdict, he decided that he would pay the restitution and also take the time-served."  Trial counsel interpreted "[Blanco's] decision to just pay the restitution and take the time-served . . . to mean that he did not want to appeal his case."  She "advised [Blanco] that if he were thought to be found guilty again that, you know, the full range of punishment was open" and they discussed that.  She testified "it was not [her] decision on the appeal" and that "[i]t was . . . Mr. Blanco's decision."

Trial counsel was shown Blanco's affidavit filed in support of his second application for writ of habeas corpus where he stated he told his trial counsel he "desired to appeal [his] case."  Trial counsel denied that conversation had ever taken place:

> Habeas counsel:  Did . . . [Blanco] instruct you to proceed with filing a notice of appeal?
>
> Trial counsel:  No.
>
> Habeas counsel:  Did you assure him that you would file a notice of appeal within a few days of September 9th?

---

[11]  On cross-examination, trial counsel acknowledged that other than her conversations with the jury, "[t]here was no other evidence coming from any other source that gave [her] the belief that [she] had the grounds to file a motion for new trial[.]"

10

Trial Counsel: No.

With respect to the motion for new trial, trial counsel conceded she failed to secure a hearing for the motion within seventy-five days of Blanco's sentencing date, and that consequently, the motion was overruled by operation of law.[12] She explained she came into court several times to request a hearing date, and when she finally obtained a date from the trial court coordinator, she "did not realize that that hearing date was outside of the 75-day period."[13] She called Blanco sometime in December 2022 to let him know she had "missed the actual time to have the hearing." The next time she heard from Blanco was in September 2023, when he called her to "hire [her] again" to represent him in a civil lawsuit filed against him by the same complainant. During her discussions with Blanco about the civil case, Blanco did not ask about an appeal or motion for new trial in the criminal matter.

After hearing argument from counsel, the trial court told the parties she would take the matter under advisement. On June 25, 2024, the habeas court issued a written order denying Blanco's application for writ of habeas corpus. Blanco filed a request for findings of fact and conclusions of law. The State filed proposed

---

[12] Trial counsel notified Blanco by email that she had filed the motion for new trial and explained that she had filed it on a Tuesday because Monday was a holiday.

[13] Trial counsel testified that the hearing on the motion for new trial was set for December 12, 2024, but the trial court's plenary power expired on November 23, 2024. Trial counsel said she was informed by the trial court coordinator that December 12, 2024 was the first available date for hearing.

11

findings of fact and conclusions of law, attaching a sworn supplemental affidavit from trial counsel dated June 10, 2024, where, among other things, trial counsel stated that:

> After speaking with the jurors, I went back to speak with Mr. Blanco regarding the trial outcome and his options after the verdict. I explained to him his right to appeal and that he had 30 days from the date of the verdict to appeal his conviction. In addition, I explained that he would still be subject to the full punishment range if he were tried again. Mr. Blanco made the decision to take the time served offer and pay the restitution. He did not at this time or any other time request that I file an appeal or Notice of Appeal after this consultation.
>
> I also let Mr. Blanco know that the jury had informed me that they believed that I had proven self-defense and that I would like to file a Motion for New Trial on his behalf. He agreed to me filing the Motion for New Trial. I let him know that I would try to locate members of the jury. I soon after began my research in trying to locate jurors. I found possible contact information for jurors #3, #6 and #8 but was unable to make contact with any of these individuals with the information that I obtained. I searched diligently prior to filing the Motion for New Trial. I notified Mr. Blanco by email after filing the Motion for New Trial.[14]

On July 29, 2024, the trial court signed an order adopting the State's proposed findings of fact and conclusions of law stating, among other things, that:

> 36. This Court finds credible [trial counsel's] supplemental affidavit [dated June 10, 2024] and supporting post-conviction testimony that after admonishing [Blanco] of his appellate rights, [he] opted not to pursue a direct appeal of his conviction in the primary case.
>
> 40. This Court finds [trial counsel's] motion for new trial was entirely based on inadmissible juror hearsay.

---

[14] Trial counsel also stated she had not secured a hearing date for the motion for new trial within seventy-five days of Blanco's sentencing.

41.  This Court finds that even if [trial counsel] had timely filed her motion for new trial, [she] would have been unable to prove the allegations in the motion for new trial because they are entirely based on inadmissible juror hearsay.

43.  [Blanco] fail[ed] to prove he was prejudiced when [his trial counsel] filed an untimely motion for new trial because [he] fail[ed] to show [the] motion for new trial had merit and because [he] fail[ed] to credibly show he notified [trial counsel] of his desire to appeal his conviction.

58.  This Court does find[] [Blanco's] post-conviction affidavit and accompanying testimony not credible and unpersuasive.

59.  This Court finds credible [trial counsel's] post-conviction assertion and accompanying testimony that [Blanco] did not indicate to her that he wanted to file a direct appeal.

60.  [Trial counsel's] failure to file a notice of appeal was not deficient or otherwise unreasonable given that, after [trial counsel's] admonishment of [Blanco's] appellate rights, [he] did not ask her to file a notice of appeal or otherwise inform her that he desired to pursue a direct appeal.

Blanco argues the habeas court erred in denying his writ because his trial counsel rendered ineffective assistance of counsel. Blanco contends he was deprived of effective assistance of counsel because his trial counsel filed an untimely motion for new trial and failed to file a notice of appeal.

**Standard of Review**

A defendant may attack the validity of his conviction for a misdemeanor offense via an application for writ of habeas corpus if he is (1) confined or restrained due to the conviction, or (2) no longer confined, but subject to collateral legal

13

consequences resulting from the conviction.  *See State v. Collazo*, 264 S.W.3d 121, 125-26 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing TEX. CODE CRIM. PROC. art. 11.09, 11.21, 11.22); *see also Tatum v. State*, 846 S.W.2d 324, 327 (Tex. Crim. App. 1993).  An applicant for post-conviction writ of habeas corpus must prove his claim by a preponderance of the evidence.  *Ex parte Nugent*, 593 S.W.3d 416, 423 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *Collazo*, 264 S.W.3d at 126.

In reviewing a court's ruling on an application for writ of habeas corpus, we "must view the evidence in the record in the light most favorable to the judge's ruling and must uphold that ruling absent an abuse of discretion."  *Diamond v. State*, 613 S.W.3d 536, 544 (Tex. Crim. App. 2020).  Further, "[w]e will uphold the habeas court's judgment as long as it is correct on any theory of law applicable to the case."  *Ex parte Besada-Peru*, No. 14-17-00193-CR, 2018 WL 542238, at *3 (Tex. App.— Houston [14th Dist.] Jan. 25, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001)).  We give "almost total deference" to the factual findings of the habeas court if "supported by the record, especially when those findings are based on credibility and demeanor."  *Diamond*, 613 S.W.3d at 544.

**Ineffective Assistance of Counsel**

The United States Constitution and the Texas Constitution guarantee individuals the right to assistance of counsel in a criminal prosecution. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. This right to counsel is more than the mere presence of a lawyer; it is a right to effective assistance. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see also Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012) (observing that "right to counsel preserves the fairness, consistency, and reliability of criminal proceedings by ensuring that the process is an adversarial one"). Effective assistance is not "errorless counsel," but rather "objectively reasonable representation." *Id.*

We evaluate claims that counsel was constitutionally ineffective under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, an appellant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 687–94; *Lopez*, 343 S.W.3d at 142. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The appellant must establish both *Strickland* prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

Failure to make a showing under either prong defeats an ineffective assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

The determination of whether an appellant received effective assistance of counsel turns on the facts of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). When conducting a *Strickland* analysis, we look to the totality of the representation and particular circumstance of each case to determine counsel's effectiveness. *Id.* (citing *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* (citing *Strickland*, 466 U.S. at 689).

To establish he has a right to post-conviction habeas relief on the basis of ineffective assistance of counsel, Blanco must establish that (1) his counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) he was prejudiced as a result of his counsel's errors. *Strickland*, 466 U.S. at 687-88, 693. The purpose of the *Strickland* two-pronged test is to assess whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result. *See id.* at 686. Blanco bears the burden to establish both prongs. *See Lopez*, 343 S.W.3d at 142 ("Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective."); *Thompson*, 9 S.W.3d at 813.

## Motion for New Trial

Blanco first complains his trial counsel was ineffective because counsel filed an untimely motion for new trial. The judgment of conviction reflects that Blanco was sentenced on September 9, 2022. Trial counsel thus had until October 10, 2022[15] to file a motion for new trial. *See* TEX. R. APP. P. 4.1, 21.4(a); *see also Brown v. State*, No. 05-03-00129-CR, 2003 WL 21674743, at *1 (Tex. App.—Dallas July 18, 2003) (mem. op., not designated for publication) (explaining operative date is not date judgment was signed, but date sentence imposed or suspended in open court). Trial counsel did not file the motion for new trial until October 11, 2022. In the motion for new trial, trial counsel stated the motion was timely because October 10, 2022—the due date for the motion—fell on Columbus Day, a "national holiday." During the hearing on Blanco's application for writ of habeas corpus, trial counsel also acknowledged she failed to secure a hearing on the motion within seventy-five days of Blanco's sentencing date.

We assume for purpose of our analysis that trial counsel was deficient both in failing to file a timely motion for new trial and in failing to set the motion for hearing within seventy-five days of Blanco's sentencing. *See* TEX. R. APP. P. 21.4(a) (stating

---

[15]  Blanco's motion for new trial was due thirty days from the date his sentence was imposed on September 9, 2022. *See* TEX. R. APP. P. 21.4(a). Thirty days from September 9, 2022, was October 9, 2022, a Sunday. Blanco's motion was due on the next day that was not a weekend "or legal holiday." *See* TEX. R. APP. P. 4.1.

17

defendant may file motion for new trial within thirty days of date sentence imposed in open court); TEX. R. APP. P. 21.8(a) ("The court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court."); *Jackson v. State*, 550 S.W.3d 238, 243 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (first prong of *Strickland* presumed where counsel "acknowledged she had made a mistake calculating the dates" to have motion for new trial heard within trial court's plenary power); *Bacey v. State*, 990 S.W.2d 319, 333-34 (Tex. App.—Texarkana 1999, pet. ref'd) (noting that although counsel had duty to assure motion for new trial was timely heard, appellant failed to establish prejudice).

We must now consider whether Blanco suffered prejudice as a result. To establish prejudice, Blanco must prove there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland* at 693; *Lopez* at 142. In other words, to satisfy the second prong of *Strickland*, Blanco must establish that had it been timely filed or heard on the merits, his motion for new trial would have been granted and a new trial ordered. *Jackson*, 550 S.W.3d at 244 (holding that "concerning a failure of counsel to timely file or obtain a hearing or ruling on a motion for new trial, [appellate courts] have consistently required a showing of actual prejudice, meaning that but for counsel's deficient performance, the trial court would have granted the defendant a new trial."); *Jimenez v. State*, 240 S.W.3d 384, 416 (Tex. App.—Austin 2007, pet. ref'd) (holding there was no

18

reasonable probability that evidence cited by appellant would have resulted in new trial); *Bacey*, 990 S.W.2d at 333-34 (holding no prejudice shown from counsel's failure to timely obtain hearing on motion for new trial); *Bryant v. State*, 974 S.W.2d 395, 400 (Tex. App.—San Antonio 1998, pet. ref'd) (holding no prejudice shown from counsel's failure to file motion for new trial).

Blanco failed to demonstrate prejudice. The only ground raised in his motion for new trial was his trial counsel's purported conversation with jurors following the trial, who allegedly told her "they believed that [Blanco] acted in self-defense." In support of the motion, trial counsel submitted her affidavit stating:

> During the trial of Nolberto Blanco, there were no conflicting facts that suggested that [he] was the first to strike. The evidence was clear that complainant threw the first punch. The jury admitted that they believed that complainant threw the first punch and that [Blanco] acted in self-defense. Thus, the jury's verdict did not support the evidence presented during trial: the verdict was contrary to the evidence and contrary to the juror[]s['] own admission that they believed that [Blanco] acted in self-defense when striking complainant.

Even assuming these allegations were true, Texas Rule of Evidence 606 prohibits a juror from "testify[ing] about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or

19

indictment."[16] TEX. R. EVID. 606(b)(1).  And "[t]he court may not receive a juror's affidavit or evidence of a juror's statement on these matters."  *Id*.  Blanco thus did not demonstrate that but for his trial counsel's ineffective assistance, his motion for new trial would have been granted.  *See Casiano v. State*, 462 S.W.3d 174, 179 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (rejecting ineffective assistance argument because juror would not have been allowed to testify at the motion for new trial hearing under Rule 606(b)); *Redmond v. State,* 30 S.W.3d 692, 699 (Tex. App.—Beaumont 2000, pet. ref'd) (holding that defendant "failed to establish prejudice by demonstrating that the motion for new trial would have been granted had the trial court conducted the evidentiary hearing"); *see also Thompson v. State*, No. 04-98-00317-CR, 1999 WL 323290, at *2 (Tex. App.—San Antonio May 19, 1999, pet. ref'd) (not designated for publication) ("Because it was clear from the face of [appellant's] motion for new trial that it was without merit, the trial court did not abuse its discretion by failing to conduct a hearing on the motion.").

### Notice of Appeal

Blanco also claims his trial counsel was ineffective because she failed to file a notice of appeal.  In his affidavit dated May 2, 2024 submitted in support of his

---

[16]     Exceptions stating that "[a] juror may testify: about whether an outside influence was improperly brought to bear on any juror; or to rebut a claim that the juror was not qualified to serve[,]" are not applicable here.  TEX. R. EVID. 606(b)(2).

second amended habeas application, Blanco alleged that on the date of his conviction and sentence, he told his trial counsel he "desired to appeal [his] case, and instructed [her] to proceed with the appeal and file [a] [n]otice of [a]ppeal with the court." According to Blanco, his trial counsel "assured [him] it w[ould] be done in a few days." Blanco further stated that "[a] month after [his] conviction, [he] received a phone call from [his trial counsel] stating that she was sorry that the notice of appeal was never filed with the court because she had missed the deadline to file [a] notice of appeal." During the writ hearing, Blanco similarly testified that trial counsel told him "she missed the deadline," but he admitted on cross-examination he "didn't understand" whether trial counsel was referring to a motion for new trial or a notice of appeal because he did not appreciate the difference between the two, and it was possible trial counsel called him to tell him that she missed the filing deadline for a motion for new trial.

During the hearing, Blanco's trial counsel testified that on the date of the verdict, she discussed with Blanco "his options of appeal" and she told him he had thirty days from the date of sentencing to appeal his conviction. Contrary to Blanco's allegations, she testified that Blanco did not ask her to appeal his conviction, and instead decided "he would pay restitution and also take the time served." She advised Blanco "that if he were thought to be found guilty again that, you know, the full range of punishment was open" and they discussed that. She

21

testified "it was not [her] decision on the appeal," it "was Mr. Blanco's decision." She testified she interpreted "[Blanco's] decision to just pay the restitution and take the time-served . . . to mean that he did not want to appeal his case[,]" and Blanco never told her he had changed his mind. Trial counsel testified that she also "notified" Blanco on a separate occasion "of his right to appeal[,]" but at no time did he request that she file a notice of appeal nor did she tell him she would file it within a few days of the verdict.[17] When asked if Blanco's statement in his affidavit that he communicated to her his desire to appeal his conviction was accurate, trial counsel answered, "No, it is not." Trial counsel reiterated that Blanco had not instructed her to file a notice of appeal.

The trial court decides, in the first instance, whether a defendant carried his burden as to the elements of his ineffective assistance claim. *See Odelugo v. State*, 443 S.W.3d 131, 137 (Tex. Crim. App. 2014). The trial court may accept or reject any part of a witness's testimony. *Id.* Indeed, as the factfinder and judge of the credibility and weight of the evidence, the trial court may disbelieve any of the assertions on which the ineffective assistance claim rests, "so long as the basis for that disbelief is supported by at least one reasonable view of the record." *Id.* (internal quotations omitted).

---

[17] Trial counsel averred the same in her affidavit dated June 10, 2024.

On July 29, 2024, the trial court signed an order adopting the State's proposed findings of fact and conclusions of law, stating the court found "[Blanco's] post-conviction affidavit and accompanying testimony not credible and unpersuasive," and stating it found "credible [trial counsel's] post-conviction assertion and accompanying testimony that the applicant did not indicate to her that he wanted to file a direct appeal." The findings of fact and conclusions of law also note that trial counsel's "failure to file a notice of appeal was not deficient or otherwise unreasonable given that, after [trial counsel's] admonishment of his appellate rights, the applicant did not ask her to file a notice of appeal or otherwise inform her that he desired to pursue a direct appeal." *See Ex parte Axel*, 757 S.W.2d 369, 373-74 (Tex. Crim. App. 1988) (holding "decision to appeal belongs to the [appellant]" and explaining trial counsel has duty to advise concerning right to appeal, not to file notice of appeal absent client's desire to do so); *see also Ex parte Castillo*, 664 S.W.3d 833, 835 (Tex. Crim. App. 2022) (holding "attorney has a duty to file a notice of appeal *if the defendant so requests*, and there is a presumption of prejudice if the notice is not filed") (emphasis added).

We afford almost total deference to the trial court's determination of historical facts supported by the record, especially when the fact findings are based on credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). And we afford the same deference to the trial judge's rulings on applications

23

of law to fact questions if resolving those ultimate questions turns on evaluating credibility and demeanor. *See Sandifer v. State*, 233 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Guzman*, 955 S.W.2d at 89). Because ineffective assistance claims involve "mixed questions of law and fact" that often involve subsidiary questions of historical fact, some of which may turn upon the credibility and demeanor of witnesses, an appellate court should not reverse the trial court's ruling unless it was clearly erroneous and arbitrary, such as when no reasonable view of the record supports it. *See Guzman*, 955 S.W.2d at 89, 93.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The scrutiny of counsel's performance must be "highly deferential" to the lower court, and "every effort must be made to eliminate the distorting effects of hindsight." *Ex parte Okere*, 56 S.W.3d 846, 855 (Tex. App.—Fort Worth 2001, pet. ref'd). Because the trial court's findings turn on an evaluation of credibility and are supported by trial counsel's testimony and affidavit, we defer to those findings. *See Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010); *Manzi v. State*, 88 S.W.3d 240, 242–44 (Tex. Crim. App. 2002); *Ex parte Roldan*, 418 S.W.3d 143, 148 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

We thus defer to the trial court's decision to believe trial counsel's testimony and disbelieve Blanco's testimony regarding whether he desired to appeal, and we

24

conclude that Blanco did not establish his trial counsel rendered ineffective assistance of counsel based on the alleged failure to file a notice of appeal.

Blanco's failure to satisfy *Strickland*'s first prong negates our need to consider the second prong concerning prejudice. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (holding that "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong").

## Conclusion

We hold Blanco failed to satisfy his requisite burden of proving by a preponderance of the evidence facts that would entitle him to relief. We thus affirm the trial court's order denying Blanco's application for writ of habeas corpus.


Veronica Rivas-Molloy
Justice


Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).